## SMITH'S APPEAL.

Testator bequeathed to his debtor legacies larger in amount than the debt; the payment of which, he directed was to be made when entirely convenient, free from the charge of interest, and named him executor; he also released another debtor from interest for twelve months after his decease.—*Held*, the amount of the executor's debt could not be deducted from the commissions charged on filing his third account.

APPEAL from the Orphans' Court of Philadelphia county.

*March* 4, 5.—Grant, an executor, having filed an account, Seaton, his co-executor, prayed it might be taken as a joint account, to which Grant assented. The only question argued here was, whether Grant was chargeable with a debt due by Seaton to the estate. The testator,

by his will, gave $10,000 to said Seaton; and by a codicil, $5000 additional, which, by a subsequent codicil, he revoked and gave him a house in Chestnut street; he then added, "The said Henry Seaton will be indebted to my estate, at my demise, as will be seen by my ledger; the payment of said debt is to be made, when entirely convenient to him, free from any charge of interest."

Testator, in his will, released one Smith from all interest due on a debt to him, and directed him to pay the principal equally between his (Smith's) brothers, allowing twelve months for payment, without interest.

The debt due by Seaton was upwards of $2000.

The claim by the residuary legatees, was to charge the executors with this debt, on the ground that the will enabled Seaton to pay the debt; and that the account was a joint one.

The auditor was of this opinion, and considered the commissions due Seaton should be thus applied.

He charged "commissions disallowed on former account" $11,771
Seaton's half of commissions on second account - - 2,075
Seaton's half of commission on present account - - 82

                                                        $13,928

The court below (King, President) struck out these charges, considering the debt was not to be enforced during Seaton's life, and the legatees appealed.

*Meredith*, for legatees.—The case of Shore *v.* Davidson, 3 Madd. 396, relied on by the judge, is not in point; for a discretion was there given to executors in compelling payment. But here Seaton occupied two positions, as executor and as debtor; in the former character no discretion is given; in the latter there are but two constructions of the words "entirely convenient," if, in a popular sense, it has no meaning, being but the ordinary phrase of polite demand; if, in a legal sense, the only light in which the court can look at it here, it means ability. A class of cases shows this, in which the promises are to pay when convenient, &c., debts discharged by law; as the stat. of limitations, bankruptcy, &c., in which ability must be shown as a condition precedent. These cases are in Moore, Espinasse, and Tyrwhitt, cited on the other side. But here is an existing debt due, and this voluntary condition should not be so strictly construed. Even then we have shown ability. In Hagin *v.* Williamson, 5 Monr. 8, the words "not to be hastened," were held not to alter the liability. The word "convenient" has been defined to be what is legal, fitting, proper, in

Co. Litt. ss. 138, 139, 231, 269, 440, 665, 670 ; and the law always considers payment of debts of this character.

It is true, Grant could not have been chargeable but by consenting to file a joint account, especially when he paid the money to his co-executor, as here, though it has been disallowed.

*Williams*, for Seaton.—Seaton being now dead, and according to the decision below, his estate chargeable, the only question is as to time of calculating interest. The words must give a discretion to the debtor ; to construe them " when able," would contradict the intention, as that is very different from " entirely convenient." The testator, in the case of Smith, has shown he knew how to explain his meaning. [ *Curiam.*—May it not be a discretion in the executor ?] They have never demanded it. 3 Esp. 159 ; 4 Esp. 36 ; Davis *v.* Smith, 12 Moore, 305 ; S. C. 4 Bing. 105, and Edmunds *v.* Downes, 4 Tyrw. 173, show, proof lies on the party claiming in such case.

*C. Ingersoll*, for Grant.—The disallowed commissions were paid to Seaton, and cannot be refunded, as he is dead, insolvent; and the question is, are the executors jointly liable ? It was said in M‘Coy's Appeal, 17 Serg. & Rawle, 57, after six years a joint account could not be altered ; but here there was no joint charge ; but a simple disallowance in a joint account ; are the executors, under such circumstances, jointly chargeable ? M‘Nair's estate, 4 Rawle, and 6 Watts, 250, shows the executor is not liable to a legatee for a payment to a co-executor. It makes a double charge, first of the commissions received and retained by Seaton, and next of a debt on the supposition of those commissions being in the power of the executors.

*March* 10. PER CURIAM.—Precedents cannot help us to arrive at the testator's meaning in a case like this. It must be drawn from his words, and the context of the whole will. Payment of the debt was to be made by Seaton, " when entirely convenient to him, free from any charge of interest." Had the testator meant that the debt was to come out of the legacy, he would have said so ; for it appears from his language in other bequests, that he knew how to speak with precision. It seems he spoke in general terms, because Seaton's necessities might have made the defalcation of the debt from his legacy much more than inconvenient to him. It is evident that the testator considered him to be a needy man, and meant to relieve him. Had he meant to give him a legacy less the amount of the debt owing to him, what was the use of saying the debt should not bear interest ? A legacy given in payment of a debt bears interest from the death, in order to counter-

balance the interest on the debt, and work an immediate extinguishment of it. It clearly seems to have been intended that Seaton should be under no obligation to pay at all. The object was to relieve him from embarrassment, making him the judge of its accomplishment, and leaving the rest to his conscience. Coinciding with the judge on the ground taken by him, it is unnecessary to consider whether it is too late to extricate Mr. Grant from the difficulty into which he brought himself by the perilous step of settling a joint account.

Decree affirmed.